Jack THOMPSON, Individually and as Next Friend for Clinton J. Heath, etc., Plaintiff-Appellant,

v.

CHRYSLER MOTORS CORPORATION, et al., Defendants,

Crimson Dodge, Inc., Defendant-Appellee.

Martha V. NASH, Plaintiff-Appellant,

v.

CHRYSLER MOTORS CORPORATION, et al., Defendants,

Crimson Dodge, Inc., Defendant-Appellee.

No. 84–4404
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 25, 1985.

Opinion on Denial of Rehearing May 6, 1985.

Maryellen Duprel, Roland C. Lewis, Jackson, Miss., for plaintiff-appellant.

Watkins & Eager, Steven D. Orlansky, James A. Becker, Jr., Jackson, Miss., for defendants-appellees.

Thomas A. Bell, J. Wyatt Hazard, Jackson, Miss., for Buster's Dodge.

Before RUBIN, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

In this diversity case filed in a Mississippi district court, the plaintiffs seek damages for wrongful death and personal injuries resulting from an automobile accident. One of the defendants successfully challenged the court's in personam jurisdiction. We conclude that under the prima facie showing made by the plaintiffs, the district court would have personal jurisdiction over the challenging defendant if the complaints are amended to allege that a defect in the part supplied by the defendant caused the accident. Accordingly, we vacate the judgment of the district court and remand.

I.

On July 19, 1980, a 1979 Dodge Magnum, in which Mississippi residents Cynthia and Clifton Heath were the driver and passenger, respectively, collided with another automobile, in which California resident Martha Nash was a passenger, on the Natchez Trace Parkway in Mississippi. The accident resulted in fatal injuries to the Heaths and personal injuries to Nash.

The Dodge Magnum involved in the accident was manufactured in May 1979 by the Chrysler Corporation and was sold on April 19, 1980, to the Heaths as a new car by Crimson Dodge, Inc. (Crimson). Crimson is a car dealership incorporated in Alabama, its place of business is in Alabama, and it is not qualified to do business in Mississippi. Crimson had conducted an inspection of the car, certifying its merchantable quality or fitness for the road. The Heaths took de-

livery of the car in Alabama and drove it back to their home in Mississippi, which was located only sixty-one miles from the Alabama dealership. As early as May 5, 1980, two weeks after taking delivery, the Heaths experienced problems with the car; specifically, the brakes would "lock up" causing a "pull" in the steering.

The Heaths made several trips to the Alabama dealership in an attempt to have the brakes on the car repaired. The plaintiffs allege that a Mississippi dealership, Buster's Dodge (Buster's), refused to service the car since it was under warranty from Crimson, thereby requiring that the Heaths travel to the Alabama dealership for service. The record reflects that the Heaths placed fifteen telephone calls from their home to Crimson during the period from June 28, 1980, to July 8, 1980. On July 3, 1980, Crimson sold and shipped to Buster's a hydraulic brake master cylinder designated for the Heaths' vehicle.

On July 19, 1982, the survivors of the Heaths filed a wrongful death action against Chrysler, Buster's, and Crimson.[1] On October 20, 1982, Nash filed a personal injury action against the same defendants.[2] These two actions were consolidated and, on June 27, 1983, Crimson, pursuant to Fed.R.Civ.P. 12(d), applied for a preliminary hearing on its defense of lack of personal jurisdiction. The matter was referred to a magistrate for findings and recommendations. After a hearing, the magistrate recommended that Crimson be dismissed for lack of personal jurisdiction. The district court adopted the magistrate's findings and recommendations, granting Crimson's motion to dismiss for lack of personal jurisdiction. The court then entered final judgment pursuant to Fed.R. Civ.P. 54(b). This appeal followed.

**1.** This wrongful death action was brought by Jack Thompson, Cynthia Heath's father, individually and as next friend for the Heaths' minor son, Clifton J. Heath; Kim Y. Thompson, Ms. Heath's mother; Clifton Heath and Ellenor Louise Adams, Mr. Heath's parents; and the Heaths' estate (collectively referred to as "the plaintiffs"). Under Mississippi law, the plaintiff in a wrongful death action is permitted to proceed "[o]nly if the decedent 'could maintain an action and recover damages,' or 'might have commenced and prosecuted' the suit.... The plaintiff, then, stands in the shoes of his dece-

## II.

The plaintiffs bear the burden of establishing the district court's jurisdiction over Crimson. *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1270 (5th Cir.1983). When the district court decides the defendant's motion without an evidentiary hearing, the plaintiffs' burden is met by presenting a prima facie case for personal jurisdiction. The allegations of the complaint, except insofar as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established. *Id.* at 1270–71; *see Black v. Acme Markets, Inc.,* 564 F.2d 681, 683 n. 3 (5th Cir.1977); C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §§ 1351, 1363 (1969 & Supp.1984). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Washington v. Norton Manufacturing Co.,* 588 F.2d 441, 443 (5th Cir. 1979). The district court below considered the entire record, including all discovered materials and Crimson's affidavit, in ruling on the motion to dismiss.

"It is well-settled that a defendant is amenable to the personal jurisdiction of a federal court in a diversity case to the extent permitted a state court in the state where the federal court sits." *DeMelo v. Toche Marine, Inc.,* 711 F.2d at 1264; *see Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 331 (5th Cir.1982), *cert. denied,* 460 U.S. 1023, 103 S.Ct. 1275, 75 L.Ed.2d 496 (1983); *Gold Kist, Inc. v. Baskin-Robbins Ice Cream Co.,* 623 F.2d 375 (5th Cir.1980) (collecting cases).

In a federal diversity action such as this, the reach of federal jurisdiction over

dent." *Estate of Portnoy v. Cessna Aircraft Corp.,* 730 F.2d 286, 289 (5th Cir.1984) (construing Miss.Code Ann. §§ 11–7–13, 91–7–233); *see Thornton v. Insurance Co. of North America,* 287 So.2d 262 (Miss.1973). Thus, despite the fact that none of the plaintiffs is a resident of Mississippi, the long-arm statute is available to the plaintiffs in the instant action because the Heaths were residents of Mississippi.

**2.** *See infra* note 5.

non-resident defendants is measured by a two-step inquiry. First, the law of the forum state must provide for the assertion of such jurisdiction; and second, the exercise of jurisdiction under state law must comport with the dictates of the fourteenth amendment due process clause.

*Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984); *see also Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir.1973). We consider first the reach of Mississippi's long-arm statute and then the question whether the assertion of jurisdiction over Crimson by a Mississippi court would be constitutionally permissible.

### A. *Scope of the Mississippi Long-Arm Statute.*

The Mississippi long-arm statute, Miss. Code Ann. § 13–3–57, provides in pertinent part:

> *Any nonresident* person, firm, general or limited partnership, or any foreign or other *corporation not qualified under the constitution and laws of this state as to doing business herein,* who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or *who shall commit a tort in whole or in part in this state against a resident or nonresident of this state,* or who shall do any business or perform any character of work or service in this state, *shall by such act or acts be deemed to be doing business in Mississippi.* Such act or acts shall be deemed equivalent to the appointment by such nonresident of the secretary of state of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accru-

ing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident or his, their or its agent, servant or employee.

(Emphasis added.)

Looking to the tripartite test[3] for personal jurisdiction under the long-arm statute that was employed by the Mississippi Supreme Court in *Collins v. Truck Equipment Sales, Inc.*, 231 So.2d 187 (Miss.1970), the magistrate determined that Crimson was not "doing business" in Mississippi and, consequently, was not amenable to an assertion of personal jurisdiction over it by a Mississippi court. Because there was no showing of any purposeful act or consummation of a transaction in Mississippi, the magistrate reasoned, it could not be said that Crimson was "doing business" in Mississippi under the first prong of the test set out in *Collins.*

The plaintiffs contend that the Mississippi Supreme Court has interpreted the reach of Mississippi's long-arm statute to include nonresident defendants who commit a single tort in the state, even if the alleged tortfeasor is not physically present in the state when the injury occurs. The plaintiffs argue that the magistrate's reliance on *Collins* was misplaced in view of the broadening effect of the statute's 1964 amendment.

In its brief, Crimson makes passing reference to the tripartite test for personal jurisdiction but chose not to address the issue of its amenability to suit under the Mississippi long-arm statute, focusing only on the due process issue. Citing *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 185–86 n. 2 (5th Cir.1978), and *Benjamin v. Western Boat Building Corp.*, 472 F.2d 723, 725 (5th Cir.), *cert. denied,* 414 U.S. 830, 94 S.Ct. 60, 38 L.Ed.2d 64 (1973), Crim-

**3.** The tripartite test was first enunciated by the Mississippi Supreme Court in *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785 (1964), a case construing the pre-1964 long-arm statute which required only that the nonresident be "doing business" in the state before personal jurisdiction could be asserted over the nonresident. The three factors are:

> "(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction;

and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation."

164 So.2d at 790 (quoting *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wash.2d 106, 381 P.2d 245 (1963)).

son declares "that this Court has stated that it believes that principles of federalism mandate that cases of this type be decided on the constitutional ground where that can readily be done on the authority of existing decisions." Appellee's Brief at 10. While recognizing that in some cases it might be appropriate to avoid construction of the state long-arm statute, we choose to address the issue of the reach of the Mississippi statute in this case because the constitutional issue should not be considered if service was defective under the Mississippi statute.

The seminal case construing the long-arm statute as amended in 1964 is *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss.1971). In *Smith*, a products liability action, the court recognized that, with the state's recent adoption of § 402A of the *Restatement (Second) of Torts*, one of the legislative purposes undergirding the 1964 amendment to the long-arm statute was to extend the jurisdictional reach of state courts to nonresidents who commit a tort, in whole or in part, in Mississippi which causes injury to a Mississippi resident. This extension provided a practical means to enforce rights accruing under the newly adopted products liability doctrine. *Id.* The *Smith* court observed:

In enacting the 1964 amendment, it will be assumed that the Legislature acted in the light of the decisions of this Court which dealt with the extent of the [in] personam jurisdiction of Mississippi courts in cases brought in this State against nonresidents under the statute as formerly written.

In the cases decided under the statute before the 1964 amendment, this Court held, in effect, that Mississippi courts['] [in] personam jurisdiction of the nonresident defendant was dependent upon whether such defendant had, or had not been "doing business" in Mississippi, or whether it had or had not "sufficient significant .contacts in Mississippi" to subject it to the jurisdiction of the Mississippi courts. This test was further restricted to those cases in which "traditional notions of fair play and of substantial justice" were not offended. *Collins v. Truck Equipment Sales, Inc.*, 231 So.2d 187 (Miss.1970); *Hilburn [sic] v. California-Western States Life Ins. Co.*, 210 So.2d 307 (Miss.1968); *Mladinich v. Kohn*, 186 So.2d 481 (Miss.1966); *Breckenridge v. Time, Inc.*, 253 Miss. 835, 179 So.2d 781 (1965); *Republic-Transcon Industries, Inc. v. Templeton*, 253 Miss. 132, 175 So.2d 185 (1965); *Mladinich v. Kohn*, 250 Miss. 138, 164 So.2d 785 (1964).

By the insertion of the new matter, there can be no doubt that the intention of the Legislature was to broaden the scope of the statute and to enlarge the jurisdiction of the Mississippi courts so as to reach nonresident defendants in two new and distinct categories: (1) The nonresident defendant who shall make a contract with a resident to be fulfilled in the State in whole or in part, and the (2) nonresident defendant who shall commit a tort, in whole or in part, in this State against a resident of the State.

The statute, as amended in 1964, has not been construed previously by this Court.

252 So.2d at 215.

■ It is apparent from the court's discussion of the 1964 amendment and the cases construing the pre-1964 statute, which number *Collins* among them, that the tripartite test for personal jurisdiction survives only as to the "doing business" category of Mississippi's existing long-arm statute. *See Washington v. Norton Manufacturing, Inc.*, 588 F.2d 441, 445–47 & n. 8 (5th Cir.), *cert. denied*, 442 U.S. 942, 99 S.Ct. 2886, 61 L.Ed.2d 313 (1979); *Cole v. Alton*, 567 F.Supp. 1081, 1083–84 (N.D. Miss.1983); *cf. Edwards v. Associated Press*, 512 F.2d 258 (5th Cir.1975). This comports with the court's characterization of the tort and contract categories as "new and distinct categories." *See Dawkins v. White Products Corp.*, 443 F.2d 589, 593 (5th Cir.1971) (indicating that *Collins* was decided on "doing business" basis for long-arm jurisdiction without reference to the amendment dealing with a nonresident who committed a tort in whole or in part within Mississippi); *see also Breeland v. Hide-A-Way Lake, Inc.*, 585 F.2d 716, 719 (5th Cir.1978); *Chromcraft Corp. v. Mirox, S.A.*, 446 F.Supp. 342, 345 (N.D.Miss.1977). The Mississippi Supreme Court has indicated that, although *Smith* was a products liability action, "the statute applies in other cases in tort and contract which are proper-

ly covered by the statute, and is not restricted to [products liability cases]." *Mandel v. James Graham Brown Foundation, Inc.*, 375 So.2d 1017, 1018 (Miss.1979).

We must determine, then, whether the terms of the Mississippi long-arm statute contemplate Crimson's alleged tort. The *Smith* court stated that "[t]he tort is not complete until injury occurs, and if the injury occurs in this State, then, under the amended statute, the tort is committed, at least in part, in this State, and [in] personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court."[4] 252 So.2d at 216. *See Estate of Portnoy*, 730 F.2d at 290; *Cosper v. Allred*, 592 F.Supp. 376, 378–79 (N.D.Miss. 1984); *Cannon v. Tokyu Car Corp.*, 580 F.Supp. 1451, 1453 (S.D.Miss.1984); *see also Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 (5th Cir.1981) ("a tort occurs when and where the actual injury or accident takes place") (Texas statute).

■ As a practical matter, then, regardless of the plaintiff's theory of tort liability, an essential element of the tort is some kind of injury. It is undisputed that the injuries at issue in the instant case were occasioned by the automobile accident occurring in Mississippi. Thus, it is clear that at least a part of the tort allegedly committed by Crimson was committed in Mississippi so as to make Crimson amenable to suit in a Mississippi court under the Mississippi long-arm statute. *See Brown*

*v. Flowers Industries, Inc.*, 688 F.2d at 333 & n. 12 ("Both by its language and by interpretation the statute includes in its reach defendants who commit a single tort. An alleged tortfeasor need not have been present in the state. If, as is alleged in this case, he causes injury in Mississippi, he is covered by the statute.") (citing cases from other jurisdictions construing statutes like § 13–3–57 similarly); *see also DeMelo*, 711 F.2d at 1269. We therefore conclude that the Mississippi long-arm statute by its terms potentially conferred jurisdiction over Crimson upon the district court.[5]

**B. *Due Process.***

■ Resolution of the issue regarding the reach of Mississippi's long-arm statute does not dispose of this case. We must now determine whether subjecting Crimson to in personam jurisdiction in Mississippi is constitutionally permissible. Due process requirements for the assertion of personal jurisdiction over a nonresident have been delineated in a familiar body of United States Supreme Court case law, culminating in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).[6] Generally, due process advances a bifurcated test: (1) the nonresident must have certain minimum contacts with the forum state; and (2) subjecting the nonresident to

---

**4.** The Mississippi Supreme Court quoted 86 C.J.S. *Torts* § 21 (1954):

> Damage resulting from a breach of a duty and invasion of a right is a necessary element of a tort.
>
> In addition to the elements of tort heretofore discussed, a third element requisite thereto is damage resulting from the breach of duty and invasion of right.

**5.** To the extent that Crimson's objection to the in personam jurisdiction of the Mississippi court can be read as an objection to Nash's use, as a nonresident plaintiff, of Mississippi's long-arm statute, we now address that issue. Before 1980, the statute had been consistently interpreted as precluding a nonresident plaintiff from using its provisions to obtain in personam jurisdiction over a nonresident defendant. *See, e.g., Estate of Portnoy*, 730 F.2d at 289; *Golden v. Cox Furniture Mfg. Co.*, 683 F.2d 115, 117 (5th Cir.1982) (collecting cases). We noted in *Smith v. DeWalt Products Corp.*, however, that "[i]n 1980, the Mississippi legislature amended the

statute to allow a non-resident plaintiff to obtain service of process upon a non-resident defendant who has committed a tort in whole or in part in Mississippi against the non-resident plaintiff." 743 F.2d at 279; *see also Herrley v. Volkswagen of America, Inc.*, 598 F.Supp. 690, 692 (S.D.Miss.1984). Thus, because the subject accident occurred after the effective date of the amendment, Nash can properly use the Mississippi long-arm statute to obtain service upon Crimson to the extent that Crimson is subject to the in personam jurisdiction of a Mississippi court.

**6.** *See Kulko v. Superior Court of Calif.*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).

jurisdiction within the forum must be consistent with traditional notions of fair play and substantial justice. *See Pedelahore v. Astropark, Inc.,* 745 F.2d 346, 348 (5th Cir.1984) (citing *Product Promotions v. Cousteau,* 495 F.2d 483 (5th Cir.1974)).

The principles guiding the due process inquiry have recently been summarized:

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a nonresident defendant. *Pennoyer v. Neff,* 95 U.S. 714 [5 Otto 714], 24 L.Ed. 565 (1877). Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940). When a controversy is related to or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of *in personam* jurisdiction. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation. *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *see Keeton v. Hustler Magazine, Inc.,* ... [—— U.S. ——], 104 S.Ct. [1473], at 1480–1481 [, 79 L.Ed.2d 790 (1984)].

*Helicopteros Nacionales,* 104 S.Ct. at 1872 (footnotes omitted); *see Growden v. Ed Bowlin & Associates, Inc.,* 733 F.2d 1149, 1150–51 (5th Cir.1984); *see also* Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction,* 1980 Sup.Ct.Rev. 77.

The concept of minimum contacts performs a dual function: "It protects the defendant against the burden of litigating in a distant or inconvenient forum. And it acts to ensure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564. Discussing the latter function, the Court cautioned:

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*Id.* at 294, 100 S.Ct. at 565 (citing *Hanson v. Denckla,* 357 U.S. at 251, 254, 78 S.Ct. at 1238, 1240). A nonresident may permissibly structure his primary conduct so as to avoid being haled into court in a particular state. *World-Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567 ("The Due Process Clause, by ensuring the 'orderly administration of the laws,' ... gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."). Moreover, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239; *see World-Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567; *Thomas v. Kadish,* 748 F.2d 276, 282 (5th Cir.1984); *see also* Lilly, *Jurisdiction Over Domestic and Alien Defendants,* 69 Va.L. Rev. 85, 99 (1983).

*World-Wide Volkswagen* involved a products liability action brought in Oklahoma state court by New York residents against, *inter alia,* a New York automobile retailer, who sold the car to the plaintiffs in New York and who did no business in Oklahoma, and a regional distributor serving the states of New York, New Jersey, and Connecticut, who distributed the car to the dealer. The purchasers were injured in an automobile accident while passing

through Oklahoma on their way to their new home in Arizona. The Court held that there were insufficient affiliating circumstances on which to predicate an exercise of state-court jurisdiction over the dealer and the regional distributor. Although it was foreseeable that automobiles sold by the defendants would travel to Oklahoma and perhaps cause injury there, the Court indicated that this is not the test for a constitutional assertion of personal jurisdiction. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum state. Rather, it is that the defendant's conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 562; *see Quasha v. Shale Development Corp.,* 667 F.2d 483, 488 (5th Cir.1982); *Product Promotions,* 495 F.2d at 496. It is not unfair to require a nonresident to defend itself in the courts of the forum state if the nonresident engaged in activities that will "support an inference that the nonresident defendant purposefully availed [itself] of the benefits of conducting business in the forum." *Standard Fittings Co. v. Sapag, S.A.,* 625 F.2d 630, 643 (5th Cir.1980) (quoting *Product Promotions,* 495 F.2d at 495), *cert. denied,* 451 U.S. 910, 101 S.Ct. 1981, 68 L.Ed.2d 299 (1981); *see Pedelahore,* 745 F.2d at 349–50; *Brown v. Flowers Industries, Inc.,* 688 F.2d at 333.

■ Before examining the particular contentions of the parties regarding Crimson's contacts with the state of Mississippi, we more clearly draw the distinction between cases involving the exercise of "specific jurisdiction" as opposed to "general jurisdiction." The former occurs "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales,* 104 S.Ct. at 1872 n. 8 (citing von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis,* 79 Harv.L.Rev. 1121, 1144–64 (1966)). "General jurisdiction" is exercised when a state asserts personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. *Id.* at 1872 n. 9

(citing Brilmayer, *supra,* at 80–81; von Mehren & Trautman, *supra,* at 1136–44; *Calder v. Jones,* —— U.S. ——, 104 S.Ct. 1482, 1485, 79 L.Ed.2d 804 (1984)). When the issue is one of general jurisdiction the defendant's contacts with the forum are examined to determine whether they are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction. *Id.* at 1873; *see also Perkins,* 342 U.S. at 446–48, 72 S.Ct. at 418–20. When the issue is one of specific jurisdiction, a court must examine the relationship among the defendant, the forum, and the litigation. *See Helicopteros Nacionales,* 104 S.Ct. at 1872; *Shaffer v. Heitner,* 433 U.S. at 204, 97 S.Ct. at 2579.

The plaintiffs analyze their claim within the framework established by *World-Wide Volkswagen,* all the while seeking to distinguish *World-Wide Volkswagen* from the instant case. They emphasize that, while the contacts between the defendant retailer and distributor and the forum in *World-Wide Volkswagen* were "fortuitous," the same characterization is inapt in the case at bar. The plaintiffs point to the following contacts: Crimson sold the car to the Heaths knowing that they were Mississippi residents; after the sale of the car, Crimson attempted to repair the brakes on the car knowing that the Heaths would be driving from their home in Mississippi to the Alabama dealership; and, finally, Crimson aided Buster's, the Mississippi dealership, in the latter's attempt to repair the brakes by selling and shipping to Buster's a master cylinder for the Heaths' vehicle.[7] The plaintiffs bottom their analysis of these contacts on the fundamental rule that minimum contacts which are sufficient to justify subjection of the nonresident to suit in the forum are determined not on a mechanical and quantitative basis, but rather under the particular facts which demonstrate the quality or nature of the activity with relation to the forum state. *See Brown v. Flowers Industries, Inc.,* 688 F.2d at 333; *Mississippi Interstate Express, Inc. v. Transpo, Inc.,* 681 F.2d 1003, 1006 (5th Cir.1982) ("inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case").

---

**7.** The plaintiffs contend that Crimson conducted a credit check on the Heaths, contacting Mississippi sources, to secure payment for the car, but nothing in the record bears out this allegation which was apparently stated for the first time in the brief filed in this appeal.

Crimson relies on the affidavit of Jean Johnson, who was Crimson's business manager and secretary-treasurer from September 1978 to April 1981, listing the following factors which militate against an inference of purposeful availment of the benefits of Mississippi's laws sufficient to justify the exercise of personal jurisdiction over Crimson: Less than one percent of Crimson's sales were made to Mississippi residents; Crimson did not advertise in any local media and had no listings in telephone directories in Mississippi; Crimson made no sales within the state of Mississippi; Crimson did not deliver any automobiles into Mississippi; and Crimson did not maintain any employees, representatives, or agents for service of process in Mississippi. There is no evidence that Crimson ever sent its employees to Mississippi or that it initiated any communications with Mississippi residents.

The magistrate determined that Crimson's contacts with Mississippi were minimal and could not support an assertion of jurisdiction over it by a Mississippi court. He found that the sale of the vehicle to the Heaths "was not the result of an effort to serve the Mississippi market, but rather 'simply an isolated occurrence.'" Record Vol. 1 at 302 (quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567). He distinguished *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir.1982), which upheld a Mississippi district court's assertion of jurisdiction over a nonresident on the basis of a single telephone call placed by the nonresident to the Mississippi plaintiff, because in *Brown* the telephone call was initiated by the nonresident defendant whereas the Heaths initiated the telephone calls to Crimson in the case at bar. Further, the magistrate found no evidence to support a causal relationship between the telephone calls placed by the Heaths and the subsequent accident. Nor did he find evidence that Crimson ever initiated any contact whatsoever with Mississippi.

But for Crimson's sale and shipment of the master cylinder to Buster's for placement in the Heaths' automobile, we might be persuaded that the Heaths' telephone calls to Crimson and their trips to the Alabama dealership for servicing of their vehicle, as well as the sale itself, merely constituted unilateral activity on the part of the Heaths insufficient to support an assertion of jurisdiction over Crimson.[8] After all, the mere knowledge that Crimson was selling to Mississippi residents would be insufficient to support the exercise of jurisdiction. *Growden v. Ed Bowlin & Associates, Inc.*, 733 F.2d 1149, 1152 (5th Cir.1984) (a nonresident corporation's contacts with the forum were insufficient to allow the exercise of in personam jurisdiction although it sold an airplane to a resident, it placed advertisements in two national publications, delivery for tax purposes was said to occur in the forum state, the nonresident promised to pay for any repairs to remedy a flickering alternator light, it knew the plane would be home-based in the forum, and it was paid by two checks drawn on a bank located in the forum); *see Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184 (5th Cir.1978) (no personal jurisdiction over nonresident boatbuilder though nonresident knew boat's homeport would be in forum); *Dommel's Hotel, Inc. v. East West Helicopter, Inc.*, 580 F.Supp. 15 (E.D.Pa.1984) (sellers' knowledge that helicopter was being purchased for primary use in forum state insufficient to support court's exercise of personal jurisdiction over nonresident sellers). Telephone calls made from the forum state to the nonresident defendant represent an insufficient basis for the forum's assertion of jurisdiction over the nonresident. *See McBreen v. Beech Aircraft Corp.*, 543 F.2d 26, 30–31 (7th Cir.1976). Further, the sale of an automobile by a dealer who operated in a state contiguous to the forum state and who knew that the purchaser would take the car to the forum state has been held insufficient to support

---

**8.** In the absence of the master cylinder contact, it could be said that Crimson was a local retailer who sought to serve only a local market and that it did not reach out to serve the Mississippi market. *See World-Wide Volkswagen*, 444 U.S. at 297–98, 100 S.Ct. at 567–68 (recognizing in dictum distinction between entities composing distribution system); *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081, 1084 (5th Cir.1984) (quoting *Nelson v. Park Industries,*

*Inc.*, 717 F.2d 1120, 1125–26 (7th Cir.1983) ("[A] manufacturer or primary distributor may be subject to a particular forum's jurisdiction when a secondary distributor and retailer are not, because the manufacturer and primary distributor have intended to serve a broad market and they derive direct benefits from serving that market.") (dictum), *cert. denied,* ⸺ U.S. ⸺, 104 S.Ct. 1278, 79 L.Ed.2d 682 (1984)).

an exercise of jurisdiction over the defendant even when a defect in the vehicle is alleged to have caused the accident giving rise to the suit.[9]

Nevertheless, because the case *sub judice* involves an allegation of specific jurisdiction, we must examine the relationship among Crimson, the state of Mississippi, and this particular litigation. In this context, the problematic contact is clearly Crimson's sale and shipment of the master cylinder to Buster's, the Mississippi dealer, for installation in the Heaths' Dodge Magnum. Even a single purposeful contact is sufficient to satisfy the due process requirement of "minimum contacts" when the cause of action arises from the contact. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957) (contract); *see Brown v. Flowers Industries, Inc.*, 688 F.2d at 333–34 (tort); *Mississippi Interstate Express*, 681 F.2d at 1012 (contract); *Simon v. United States*, 644 F.2d 490, 499 (5th Cir.1981) (tort); *cf. Elkhart Engineering Corp. v. Dornier Werke*, 343 F.2d 861 (5th Cir. 1965). In *Brown v. Flowers Industries, Inc.*, we held that due process permitted the assertion of jurisdiction over a nonresident whose sole contact with the forum state was the making of a single defamatory telephone call to a person in that state. In *Simon*, we held that due process was not offended by the assertion of jurisdiction over a nonresident who committed a solitary constitutional tort against a resident in the forum state.[10] Likewise, to the extent that the plaintiffs contend that the accident was caused by a defect in the master cylinder, they have made out a prima facie case for in personam jurisdiction.[11] The sale and shipment of the master cylinder into Mississippi represented an affirmative act by Crimson to introduce its product into Mississippi for use in that state. By this shipment, Crimson purposefully availed itself of the privilege of conducting activities in Mississippi and its connection with the forum is such that it should reasonably anticipate being haled into court there when the accident giving rise to the suit was caused by an alleged defect in the product sold and shipped to the forum. *Cf. DeMelo*, 711 F.2d at 1271. Moreover, while the other asserted contacts between Crimson and Mississippi might not have been sufficient of themselves to support jurisdiction, they weigh in favor of our conclusion when viewed in the aggregate with the master cylinder contact.

The plaintiffs did not allege in their complaints that a defect in the master cylinder caused the accident. Their allegation that a defect in the Heaths' automobile caused the accident was necessarily general, however, since it was discovery subsequent to the filing of the complaints that pointed to the brake system, and hence the master cylinder, as a possible cause of the accident. Recognizing that a Rule 12(b) dismissal is a drastic remedy and that dis-

---

9. *See McKown v. Criser's Sales & Serv.*, 48 Md. App. 739, 430 A.2d 91 (1981) (dealer in state contiguous with the forum); *Goff v. Armbrecht Motor Truck Sales, Inc.*, 284 Pa.Super. 544, 426 A.2d 628 (1980) (same); *Yules v. General Motors Corp.*, 297 F.Supp. 674 (D.Mont.1969) (dealer who knew purchaser would take car to forum); *Granite States Volkswagen, Inc. v. District Court*, 177 Colo. 42, 492 P.2d 624 (1972) (same); *Tilley v. Keller Truck & Implement Co.*, 200 Kan. 641, 438 P.2d 128 (1968) (both).

10. *See also Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir.1976) (a single transaction is a sufficient contact to satisfy the due process standard if it gives rise to the liability asserted in the suit); *Duple Motor Bodies, Ltd. v. Hollingsworth*, 417 F.2d 231 (9th Cir.1969); *Sage Computer Technology v. P-Code Distributing Corp.*, 576 F.Supp. 1194 (D.Nev.1983); *Cal-Mar Industries, Inc. v. Wilson Research Corp.*, 442 F.Supp. 796, 798–99 (S.D.Fla.1977); Restate-ment (Second) of Conflict of Laws §§ 36, 49 (1971); R. Casad, Jurisdiction in Civil Actions ¶ 7.02[2][c][i] (1983).

11. In *DeMelo*, we stated:
"Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981), *cited in Brown, supra.* The trial court has considerable leeway to decide at what stage of the proceedings plaintiff's ultimate showing must be made. *Id.; see generally Data Disc, Inc. [v. Systems Technology Assoc., Inc.,* 557 F.2d 1280,] 1285–86 & n. 2 [ (9th Cir.1977) ].
711 F.2d at 1271 n. 12.

covery materials submitted for review by the district court in considering the motion to dismiss raised the possibility that personal jurisdiction over Crimson would be proper on a strict liability claim that the accident was caused by a defect in the master cylinder, we vacate the judgment of the district court and remand the case to permit the plaintiffs an opportunity to amend their complaints to allege that a defect in the master cylinder caused the accident. *See* 3 J. Moore, Moore's Federal Practice ¶ 15.11 (1984 & Supp.1984–85). If on remand the plaintiffs amend their pleadings accordingly, they will have established a case on the purposeful availment issue sufficient to resist dismissal on the face of the pleadings.

The second question to be resolved under due process analysis is whether it would be fair, just, and reasonable to require Crimson to defend itself in a Mississippi court. Factors relevant to this inquiry are "whether the forum state has any special interest in exercising jurisdiction, and whether the convenience of the parties favors litigating in another state." *Austin v. North American Forest Products*, 656 F.2d 1076, 1090 (5th Cir.1981); *see Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d at 1085; *Brown v. Flowers Industries, Inc.*, 688 F.2d at 333. With regard to the interest-of-the-state factor, we stated in *DeMelo:*

> Mississippi has an exceptionally strong interest in providing a forum for the redress of injuries to its residents occurring within its borders and caused by an allegedly defective product shipped from outside the state. *Cf.* Restatement (Second) of Conflicts of Laws § 146 (1971). This interest is based on more than the fact that the injured party is a Mississippi resident, though that fact alone is significant. Also important is the practical consideration that most product liability cases involve multiple parties. Where an accident caused by a defective

product occurs within a state, it is likely that parties other than the plaintiff, such as retailers or employers, will also reside there. In this situation, the state has a substantial interest in providing a forum so that all claims arising from the accident may be litigated by its residents conveniently and efficiently in one court at one time.

711 F.2d at 1272. These remarks are equally applicable to the case at hand. The "relative conveniences and inconveniences to the parties" lead us to conclude that maintenance of this action against Crimson in Mississippi would not offend traditional notions of fair play and substantial justice. Forcing the plaintiffs to pursue their claim against Crimson in Alabama would not advance their interest in obtaining convenient and effective relief, not because of the geographic distance between Mississippi and Alabama, but because most of the witnesses reside in Mississippi, two of the three defendants reside in Mississippi, and only a Mississippi court can resolve the matter in a single action. Further, because the distance between Alabama and Mississippi is not great, Crimson is not inconvenienced unreasonably. *See id.* at 1271. Thus, the interests of the state and the relative interests of the parties favor exercise of jurisdiction by a Mississippi court.

### III.

For the foregoing reasons, the judgment of the district court is vacated and the case is remanded to permit the plaintiffs to amend their complaints to allege that the accident was caused by a defect in the master cylinder. If the plaintiffs fail to amend their pleadings accordingly within thirty days, this suit shall be dismissed by the district court for want of personal jurisdiction. Each party is to bear its own costs of this appeal.[12]

**VACATED and REMANDED.**

---

12. During our consideration of this appeal, the plaintiffs moved the court to remand the case to the district court based on newly discovered evidence which purportedly shows that, at the time of the sale of the Dodge Magnum to the Heaths, Crimson was at least 50% owned, operated, and managed by the Chrysler Corporation, a defendant over which the Mississippi court has jurisdiction. In view of our decision to remand the case without regard to this newly discovered evidence, we leave it to the district court to consider this evidence in the first instance either at a pretrial evidentiary hearing or at trial when the plaintiffs are required to make their ultimate showing of jurisdiction. *See supra* note 11.

### ON PETITION FOR REHEARING

PER CURIAM:

 In its petition for rehearing, the defendant-appellee, Crimson Dodge, Inc., alleges that the panel opinion was entered on the assumption, which was entirely justified from the record on appeal, that there was evidence to support the plaintiffs' amending their complaints to allege that the accident was caused by a defect in the master brake cylinder shipped by Crimson to Buster's Dodge in Mississippi. Crimson now alleges that statements made by the plaintiffs' expert witness in a deposition, which was not made a part of the record in the district court, preclude the plaintiffs from asserting in good faith that a defect in the master cylinder caused the accident. Crimson moves that we supplement the record on appeal to include the deposition of the plaintiffs' expert witness. We deny this motion because the document was not a part of the record when the district court entered the judgment we were called upon to review and to admit the document at this stage of the proceedings would be inappropriate. *See* 9 J. Moore, B. Ward & J. Lucas, Moore's Federal Practice ¶ 210.08[2] (2d ed. 1985). In addition, since Crimson's petition for rehearing was necessarily predicated on supplementation of the record with the deposition, and we have denied that motion, we deny the petition as well.

In doing so, however, we note that, if the plaintiffs amend their complaints to allege that a defect in the master cylinder caused the accident, Crimson may submit the deposition to the district court in subsequent proceedings in which Crimson may challenge whether the plaintiffs have carried their burden of establishing jurisdiction by a preponderance of the evidence. *See Thompson v. Chrysler Motors Corp.,* 755 F.2d at 1173 n. 11 (quoting *DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1271 n. 12 (5th Cir.1983)). It goes without saying that an amendment of the complaints must be made in good faith.

It is ordered that the motion to supplement the record and the petition for rehearing in the above entitled and numbered cause are DENIED.