**Lena SANDERS,**
**Plaintiff/Counter Defendant,**

v.

**Earl HUMPHREY, Individually and**
**Earl Humphrey d/b/a Humphrey**
**Motors, Defendants/Counter–Claimants,**

**and**

**Jessie Owens, Defendant.**

**Civ. A. No. J88–0648(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 9, 1990.

---

Mark E. McLeod, Jackson, Miss., for plaintiff/counter defendant.

Reeves Jones, Jackson, Miss., for Earl Humphrey.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Earl Humphrey, individually and d/b/a Humphrey Motors, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the basis that plaintiff's claims in this cause are precluded by the doctrine of res judicata. The facts giving rise to this lawsuit were set forth in a previous memorandum opinion and order of this court dated August 28, 1989, 720 F.Supp. 575, as follows: On March 31, 1987, Jackie's Auto Sales, a Mississippi used car dealership owned and operated by David Yancey, purchased a 1982 Cadillac Sedan DeVille from Earl Humphrey d/b/a Humphrey Motors, a used car dealership in Bossier City, Louisiana. In exchange for his $5,000 bank draft, Yancey acquired possession of the vehicle and took it to his used car lot in Jackson, Mississippi. Humphrey Motors, however, retained the certificate of title since, pursuant to its sales agreement with Jackie's, it agreed to transfer title to Jackie's only at such time as the bank draft given by Yancey was paid. After Yancey had obtained possession of the Cadillac, Humphrey Motors on several occasions presented Yancey's draft to the bank for payment and each time it was dishonored. When it became apparent that Humphrey Motors would not be able to recover the purchase price of the automobile, Earl Humphrey, on June 12, 1987, sent a representative to Jackson to recover the car from Jackie's. In the meantime, however, Yancey, on April 6, 1987, had sold the automobile to Lena M. Sanders, the plaintiff in the case at bar.

Mrs. Sanders had purchased the car with the understanding that it was in need of certain repair work which was to be per-

formed by Jackie's. Subsequent to her acquiring possession of the Cadillac, an employee of Jackie's took the car in for repairs and upon returning it to Mrs. Sanders informed her that it would have to be taken in again once a part had arrived. On or about June 12, an employee of Jackie's, Jessie Owens, went to Mrs. Sanders' home to obtain the car, explaining that he was taking it in for further repairs. Mrs. Sanders voluntarily entrusted possession of the Cadillac to Owens who thereafter turned the car over to the agent of Humphrey Motors. The car was then taken to Humphrey Motors in Louisiana.

When the car was not returned to Mrs. Sanders and she learned that it had not actually been taken in for repairs, she reported it as stolen. On June 18, 1987, six days after Humphrey had regained possession of the Cadillac from Lena Sanders and had it returned to his lot in Bossier City, Louisiana, the car was impounded by the Bossier City Police Department as a stolen vehicle. Humphrey responded by filing suit in the Bossier Parish 26th Judicial District Court against the City of Bossier, the City of Bossier Police Department, Detective G. Huddleston, Jackie's Auto Sales, David Yancey and Lena Sanders. Though process was mailed to Lena Sanders at her home address, Mrs. Sanders failed to appear and ultimately, on November 16, 1987, a judgment was entered in the Louisiana action which, *inter alia*, confirmed title to the Cadillac in Humphrey and awarded Humphrey damages in the amount of $5,000 against Yancey, Jackie's Auto Sales and Sanders, jointly and severally.

On August 1, 1988, Mrs. Sanders brought the present action against Humphrey[1] charging that he had converted the automobile.[2] Included in Humphrey's answer to the complaint was an affirmative defense of res judicata premised on the Bossier Parish judgment; additionally, Humphrey asserted a counterclaim against

Mrs. Sanders to enforce the $5,000 judgment entered in that cause. By the present motion, Humphrey urges the applicability of res judicata to plaintiff's claim against him and seeks to enforce the Louisiana judgment against plaintiff under the Full Faith and Credit Clause of the United States Constitution. In response to defendant's motion, Mrs. Sanders takes the position that the Louisiana state court's judgment cannot be enforced in this action nor can it form the basis for a defense of res judicata inasmuch as the Louisiana court acted without personal jurisdiction over her.

█ It is provided at 28 U.S.C. § 1738, which is derived from Article IV, § 1 of the Constitution, that records and judicial proceedings of all state and territorial courts which have been authenticated "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." In *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151 (5th Cir.1974), the court explained that

> Under the compulsion of [28 U.S.C. § 1738] federal courts are required to give full effect to the final judgments of state courts, subject only to narrowly circumscribed avenues of collateral attack.... Where the defendant has appeared in the original action, the judgment in that case is res judicata on the issue of personal jurisdiction, whether the defendant actually litigated the question or merely permitted it to pass without objection.... *In those cases, however, in which defendant makes no appearance and the judgment goes by default, the defendant may defeat subsequent enforcement in another forum by demonstrating that the judgment issued from a court lacking personal jur-*

---

**1.** Also named as defendants were Jessie Owens, the employee of Jackie's Auto Sales who procured the automobile from plaintiff, and State Farm Fire and Casualty Company, plaintiff's automobile insurer. Jessie Owens remains a defendant; State Farm was dismissed from the

action by order of the court dated September 14, 1989.

**2.** The case was originally filed in the Circuit Court of Hinds County, First Judicial District, but was subsequently removed to this court.

*isdiction....* Of course, the "burden of undermining [the judgment] rests heavily upon the assailant," *Williams v. North Carolina,* 1945, 325 U.S. 226, 233–34, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577; and, should the attack fail, the default judgment becomes no less final and determinative on the merits of the controversy than a decree entered after full trial. *Hazen Research,* 497 F.2d at 153 (citations omitted) (emphasis supplied); *see also Hudson Drydocks, Inc. v. Wyatt Yachts, Inc.,* 760 F.2d 1144, 1146 (11th Cir.1985) (enforcement in federal forum of state default judgment against defendant who never made appearance in action subject to defeat on ground that state court lacked personal jurisdiction); *Pardo v. Wilson Line of Washington, Inc.,* 414 F.2d 1145, 1147–48 (D.C.Cir.1969) (judgment may be collaterally attacked on ground there was no jurisdiction unless party has appeared in former action and unsuccessfully contested jurisdiction or waived objection). Plaintiff, therefore, having made no appearance in the Louisiana action, may challenge, on jurisdictional grounds, the validity of the Louisiana judgment. And, to defeat the present motion, she has the burden to establish that the Louisiana court lacked jurisdiction to render the judgment that is now at issue. In the court's opinion, she has sustained her burden.

Evidence presented at a hearing on the personal jurisdiction issue focused primarily on the service of process utilized to inform plaintiff of the pendency of the Louisiana action. Defendant demonstrated that, in accordance with the procedures provided by Louisiana law, La.Rev.Stat. Ann. § 13:3204 (West 1990),[3] the appropriate documents were mailed to Mrs. Sander's home address by certified mail, return receipt requested. The postal authority in plaintiff's area sent to her address a card informing her that it had mail addressed to her and advising that she retrieve that mail from her area post office. Plaintiff testified that she never received any such notice or notices. Ultimately, the papers were returned "unclaimed." It is defendant's position that such service was sufficient[4] under Louisiana law and that as a consequence of plaintiff's having been properly served with process, the judgment entered was valid and enforceable. Plaintiff, of course, disputes that either the service or the judgment is effective. However, irrespective of the effectiveness of the service of process, and even assuming for the sake of argument that process was indeed sufficient, there nevertheless exists a compelling basis for the conclusion that the Louisiana court had no jurisdiction to enter a judgment against Mrs. Sanders.

At the hearing before this court, Mrs. Sanders testified that she had never been to the State of Louisiana and that she had never met or had prior dealings of any sort with Earl Humphrey. Her testimony was absolute and was unchallenged by defendant. A fundamental precept of the law is that service of process alone does not serve to confer jurisdiction over a person. While it is of course an essential ingredient to the proper exercise of jurisdiction, there is the additional requirement that the exertion of jurisdiction be constitutionally permissible, *see Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162,

---

3. Louisiana Revised Statute 13:3204 provides:
 A. A certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by counsel for the plaintiff to the defendant by registered or certified mail, or actually delivered to the defendant by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general jurisdiction.

 . . . . .

 C. Service of process so made has the same legal force and validity as personal service on the defendant in this state.

4. Had the issue regarding service of process been presented to the Bossier Parish court, it would have concluded that process was sufficient. Under Louisiana law, "all that is necessary to constitute service upon a non-resident is that counsel for plaintiff send a certified copy of the citation and of the petition ... to the defendant by registered or certified mail.... There is no requirement for a signed return receipt." *Thomas Organ Co. v. Universal Music Co.,* 261 So.2d 323, 327 (La.Ct.App.1972).

1168–69 (5th Cir.1985), for "[t]he Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert *in personam* jurisdiction over a non-resident defendant," *id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413, 104 S.Ct. 1868, 1871, 80 L.Ed.2d 404 (1984)). In determining whether due process has been observed by a court rendering judgment, two considerations are presented: (1) whether the non-resident had certain minimum contacts with the forum state; and (2) whether subjecting the nonresident to jurisdiction is consistent with traditional notions of fair play and substantial justice. *Id.* at 1168. It is undisputed in the case at bar that Mrs. Sanders has never had any connection of any sort with the State of Louisiana. That she was named as a defendant in a lawsuit in Louisiana resulted not from any affirmative action on her part that would lead her to expect that she could or should be subjected to jurisdiction there. Rather, she became involved solely as a result of her having purchased an automobile in Mississippi from a Mississippi used car dealer. Given these undisputed facts, it is clear that Mrs. Sander's complete lack of contact with Louisiana renders the exercise of jurisdiction over her by a court of that state violative of due process; and it could hardly be said that the exercise of jurisdiction in these circumstances rings of "fair play" or "substantial justice."

 Defendant argues that even were the court to conclude that *in personam* jurisdiction was lacking in the Louisiana action, that judgment is nevertheless binding and enforceable since that lawsuit, the purpose of which was to determine ownership rights in the Cadillac, was not a personal action but rather a *quasi in rem* action. It is manifest that, to the extent that a monetary judgment was entered against Mrs. Sanders, the action was a personal action against her requiring personal jurisdiction over her. Since jurisdiction was lacking, the judgment for money damages is unenforceable in this action. To the extent that the case concerned the ownership of the property, the defendant is correct that the action was not personal, but *quasi in rem.* However, that fact does not change the conclusion that the Louisiana court lacked jurisdiction to adjudicate Humphrey's claim of superior ownership rights. In *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court held that the same test of "fair play and substantial justice" governs assertions of *in rem* as well as *in personam* jurisdiction. The Court explained as follows:

> [I]n order to justify an exercise of jurisdiction *in rem,* the basis for jurisdiction must be sufficient to justify exercising "jurisdiction over the interests of persons in a thing." The standard for determining whether an exercise of jurisdiction over the interests of persons is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe* [*Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)].

*Shaffer v. Heitner,* 433 U.S. at 207, 97 S.Ct. at 2581. The Court further observed that

> the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation. For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.

*Id.* at 207–08, 97 S.Ct. at 2581. Here, the fact that the Cadillac, the ownership of which was at issue in the Louisiana case, was located in Louisiana is not indicative of any expectation by Mrs. Sanders that her interests would be protected by Louisiana. She did nothing to cause the car to be located in that state. To the contrary, she considered that the car appropriately belonged in Mississippi, with her, and that it had been stolen from her and wrongfully transported to Louisiana. The Bossier Par-

ish case was, simply stated, the "unusual" case referenced by the Supreme Court; though the car was undeniably located in Louisiana, the Louisiana court had no jurisdiction to adjudicate the action.[5] Consequently, the judgment of that court is unenforceable.

■ Alternative to his motion for summary judgment, defendant seeks partial summary judgment on the issue of punitive damages. The court is of the opinion that judgment as to plaintiff's claim for punitive damages should be entered for defendant. This court previously held in this case that "regardless of the true ownership of the vehicle, Humphrey Motors, as the uncontroverted facts clearly demonstrate, had a colorable claim that it owned the automobile and was entitled to possession." Under Mississippi law, punitive damages are not available in cases of conversion where the defendant acted in good faith, but in the mistaken belief that he had authority to exercise control over the property allegedly converted. *See Walker v. Brown,* 501 So.2d 358, 362 (Miss.1987). Plaintiff claims that even though Mr. Humphrey may initially have taken the car based on a good faith belief in his ownership, she is nevertheless entitled to jury consideration of punitive damages based on his conduct *after* he had regained possession of the car. In support of her position, plaintiff relies on the deposition testimony of Mr. Humphrey in which he stated that after getting the automobile back on his car lot, he realized that it had been sold to plaintiff. Plaintiff argues that defendant, even after gaining this knowledge, took every step and action possible to ensure that she did not regain possession of the automobile. The undisputed evidence in this case demonstrates that the only action taken by Mr. Hum-

phrey after learning of plaintiff's claim of ownership was the filing of the Louisiana lawsuit to determine the true and lawful ownership of the vehicle. Though this court now finds that judgment obtained by Mr. Humphrey unenforceable, the fact that he attempted to use the legal processes made available for such purposes cannot support a finding that he acted intentionally or in reckless disregard of the plaintiff's claim of ownership. Thus, even though it may ultimately be concluded that plaintiff owns the automobile, there can be no basis for an award of punitive damages.

For the reasons stated, it is ordered that defendant's motion for summary judgment is denied. It is further ordered that defendant's motion for partial summary judgment on the issue of punitive damages is granted.

ORDERED.

---

5. The Louisiana long-arm statute, La.Rev.Stat. Ann. § 13:3201 (West 1990), permits the courts of that state to exercise personal jurisdiction over a nonresident "who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident ... (5) Having an interest in, using or possessing a real right or immovable property in this state...." In *Clay v. Clay,* 389 So.2d 31, 36 (La.1980), the Louisiana Supreme Court observed that under the long-arm statute, "personal jurisdiction may be exercised over a non-

resident as to a cause of action arising from the non-resident's ownership interest in property within the state...." The court, however, recognized that following *Shaffer v. Heitner,* "the fiction that traditional in rem jurisdiction is anything other than an assertion of jurisdiction over the person can serve only to allow continued state-court jurisdiction that is fundamentally unfair," and accordingly, "*all* assertions of state-court jurisdiction must be evaluated by *International Shoe* fairness standards." *Clay,* 389 So.2d at 36 n. 6 (citing *Shaffer v. Heitner*).