William J. COLE and Etta Mae Cole, Individually, and as Natural Parents and as Next Friends of Elizabeth Dale Cole, Deceased; Michael Andrew Cole, Deceased; Richard Wilson Cole, Deceased; William Clifton Cole, Individually, and John Len Cole, Individually, Plaintiffs,

v.

Troy Lloyd ALTON, Individually, and Atlas Carriers, Inc., an Arkansas corporation; Lawrence A. Megel, Individually; Ernie Davis, Individually; Earl A. Pike, Sr., Individually; and G.R. Pike, Individually; Jointly and Severally, Defendants.

Civ. A. No. WC 82–36–WK–P.

United States District Court, N.D. Mississippi, W.D.

July 6, 1983.

Barrett J. Clisby, Oxford, Miss., Reed L. Malkin, Memphis, Tenn., for plaintiffs.

W. Scott Welch, III, Kenneth W. Barton, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for defendants.

## MEMORANDUM ORDER

KEADY, District Judge.

In this diversity action, plaintiffs, William J. Cole and Etta Mae Cole, individually

and as next friends of three deceased minor children, sue defendants, Troy Lloyd Alton, Atlas Carriers, Inc., Lawrence A. Megel, Ernie Davis, Earl A. Pike, Sr., and G.R. Pike for the wrongful death of their children and personal injuries sustained by Etta Mae Cole, and for related claims. The Court has before it the motion of the defendants Megel, Davis, Earl A. Pike, Sr., and G.R. Pike (movants) challenging this court's personal jurisdiction over them as well as the sufficiency of process. Defendants Alton and Atlas Carriers do not contest *in personam* jurisdiction.

This lawsuit arises out of a tragic automobile-truck collision which occurred near Red Banks, Mississippi, on October 28, 1981. The truck involved in the accident was leased and operated by Atlas Carriers, Inc., an Arkansas corporation, and was driven by Alton, an Arkansas resident.

The movants are also residents of Arkansas and, with the exception of Earl A. Pike, Sr., were all officers, directors, and shareholders of Atlas Carriers. Movant Earl A. Pike, Sr., an employee of Atlas Carriers, owned the truck involved in the collision, which he had leased to Atlas Carriers, and over which he had no right of control at the time of the accident. Each movant, sued in his individual capacity, asserts lack of *in personam* jurisdiction because of an absolute lack of personal contacts with the State of Mississippi. Although it is conceded that Atlas Carriers, the corporate employer, was "doing business" in Mississippi, the movants take issue with plaintiffs' allegation that any of them individually "was 'doing business' and did commit a tort in whole or in part in the State of Mississippi." Movants' uncontested affidavits support the proposition that none of them had individual contacts of any nature with this state.

Despite our previous holding that "jurisdiction over individual officers and employees of a corporation cannot be predicated merely upon the jurisdiction over the corporation itself," *Webb v. Culberson, Heller & Norton, Inc.,* 357 F.Supp. 923, 925 (N.D.

Miss.1973), the precise issue now presented may not be disposed of so readily. Plaintiffs establish by the sworn affidavit of the Arkansas Secretary of State, that Atlas' Articles of Incorporation were revoked effective September 22, 1981, for failure to pay franchise taxes pursuant to Ark.Stat. Ann. § 84–1842, and that on the date of the accident, the corporation was without legal standing. The corporate charter was not reinstated until October 27, 1982.

Because of this corporate failure, plaintiffs argue that the movants both transacted business in Mississippi and committed a tort in this state in their individual capacities, so as to make them constitutionally subject to the *in personam* jurisdiction of this court and to service of process under Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57 (Supp.1982).

It is plaintiffs' contention that the Arkansas courts would impose personal tort liability upon the movants since Atlas Carriers did not exist as a corporation at the moment of the collision. This proposition has not yet been passed upon or settled by the Arkansas Supreme Court. Plaintiffs further urge that imposition of individual tort liability under the Arkansas forfeiture statute would automatically invoke the personal jurisdiction[1] of this court over the movants. Plaintiffs concede that movants did not independently have requisite "minimum contacts" with this state to validly subject them to *in personam* jurisdiction "if the corporate structure of the Defendant, Atlas Carriers, Inc., were intact at the time of the collision . . . ." (Plaintiffs' Brief in Opposition, p. 2).

Acknowledging the corporate charter was temporarily forfeited at the time of the accident, movants vigorously assert, through the uncontested affidavit of Lawrence Megel, president of Atlas Carriers, that they had reason to believe the franchise taxes had been paid by the incorporating attorney; that they received no notice of the forfeiture until June 30, 1982, nine months after the revocation; that the delin-

quent $25.00 franchise tax was promptly paid, and the corporate charter reinstated; and that at no time during the period of statutory forfeiture did any of the officers or shareholders intend to carry on the business of Atlas Carriers as individuals, or partners, or in any form other than as a valid corporate entity.

The question thus presented on these facts is whether, under the familiar standards of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny, this federal district court may constitutionally exercise *in personam* jurisdiction over nonresident individuals whose only contacts with this jurisdiction derive from their participation in the ownership and management of a foreign corporation doing business in Mississippi, when that corporation's charter had been temporarily forfeited in the state of its domicile. To support our jurisdiction, plaintiffs would have the Court determine the substantive rights of the parties under an as yet unsettled point of Arkansas law. Since the jurisdictional issue can be resolved without forecasting law for which there is no precedent, we decline that invitation, and instead base our ruling upon the Mississippi Long-Arm Statute, Miss.Code Ann. § 13–3–57, and the constitutional tests which its application must satisfy.

■ Our analysis is necessarily twofold. The initial inquiry is whether the state's long-arm statute confers jurisdiction and if so, the next is whether exercise of jurisdiction thereunder comports with due process requirements of the Fourteenth Amendment. *Familia De Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134, 1138 (5th Cir.1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981); *Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 489 (5th Cir.1974).

■ Mississippi's Long-Arm Statute provides that any nonresident person, partnership or corporation shall be deemed to be "doing business" in Mississippi if such per-

son or firm makes a contract with a resident of Mississippi to be performed in whole or in part in this state, or commits a tort in whole or in part in this state, or does any business in Mississippi. *Miss.Code Ann.* § 13–3–57 (Supp.1982). As stated, that jurisdiction exists over the corporate entity cannot, without more, confer jurisdiction over the officers and shareholders individually. *Webb v. Culberson, Heller & Norton,* 357 F.Supp. 923, 925 (N.D.Miss.1973). Some independent, individualized contacts must exist between the nonresident defendants and the forum. Plaintiffs assert that such contacts can be found in the transaction of corporate business in Mississippi after temporary lapse of the corporate charter. Movants counter with the claim that jurisdiction must fail since there was no purpose or intent on their part to "do business" as individuals.

Under relevant Mississippi cases, we conclude that the movants' position is the sounder view. The Mississippi Supreme Court delineated three basic factors that must coincide if jurisdiction is to be entertained in *Mladinich v. Kohn,* 250 Miss. 138, 164 So.2d 785, 790 (1964). *Mladinich* was decided after passage, but before the effective date, of the 1964 amendment to the Long-Arm Statute that expands the jurisdictional grounds to encompass the making of a contract or the committing of a tort. Nevertheless, *Mladinich's* three factors remain authoritative. Those three factors are:

(1) The nonresident defendant or foreign corporation must *purposefully* do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative conve-

# 1084

nience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

164 So.2d at 790 (quoting *Tyee Construction Co. v. Dulien Steel Products, Inc.,* 62 Wash.2d 106, 381 P.2d 245, 251 (1963)) (emphasis added).

*Mladinich's* "purposefulness of action" element attains especial significance from the United States Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), which discussed the necessity of "foreseeability" in analyzing the minimum contacts prong of due process. As the Supreme Court stated, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum state are such that he should *reasonably anticipate* being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567 (our emphasis)

The Fifth Circuit recently addressed the question of what weight should be given to the number of contacts. In so doing, the court relied on *World-Wide Volkswagen,* stating that "[w]hat is more significant is whether the contacts suggest that the nonresident defendant purposefully availed himself of the benefits of the forum state." *Brown v. Flowers Industries, Inc.,* 688 F.2d 328, 333 (5th Cir.1982); *see also Quasha v. Shale Development Corp.,* 667 F.2d 483, 488 (5th Cir.1982) (construing similar Louisiana statute); *Dawkins v. White Products Corp.,* 443 F.2d 589, 592 (5th Cir.1971) (discussing purposefulness element of *Mladinich*); *Alford v. Whitsel,* 322 F.Supp. 358, 360 (N.D. Miss.1971) (same).

■ It is abundantly clear that in the instant case the individual movants could not have reasonably foreseen that they would be haled into court in Mississippi. The plaintiffs have not alleged or shown that the individuals committed any act in this state of a personal nature apart from the corporate function. Plaintiffs' injuries

are claimed to result from "decisions, actions and activities of the movants acting in the scope of their employment and in the furtherance of the business of the corporation by which they were employed," *Webb,* 357 F.Supp. 924, and therefore, because movants at all times believed in good faith that they were acting on behalf of a lawful corporation, this Court concludes that jurisdiction cannot, within the bounds of "fair play and substantial justice," be asserted vicariously over the individual movants.

Therefore, it is

ORDERED

That the claims asserted against Lawrence A. Megel, Ernie Davis, Earl A. Pike, Sr., and G.R. Pike, individually, are hereby dismissed for lack of *in personam* jurisdiction.