**FALCO LIME, INC., Plaintiff,**

v.

**TIDE TOWING COMPANY, Defendant.**

**No. WC89–100–B–D.**

United States District Court,
N.D. Mississippi, W.D.

Nov. 18, 1991.

C.W. Walker, III, Greenville, Miss., for plaintiff.

Alan K. Goldstein, Goldstein & Price, St. Louis, Mo., Ernest Lane, III, Greenville, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause is before the court on the motion of defendant Tide Towing Company ("Tide") to dismiss the complaint filed by plaintiff Falco Lime, Inc. ("Falco") pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Plaintiff has responded to the motion and the court, having considered the memoranda, affidavits and depositions before it, is prepared to rule.

## FACTS

The stranding of the plaintiff's barges on July 25, 1988 on the Mississippi River at Memphis, Tennessee is the basis for this suit. The amended complaint charges the defendant with negligent maintenance and operation of it's tow boat, the M/V SENATOR SAM, which ran aground with seven of Falco's barges in tow.

According to the affidavits and deposition submitted to the court, Tide is an Illinois corporation whose office and principal place of business is located in Granite City, Illinois. Tide conducts approximately 90% of its business on the Illinois River. Tide is not qualified to do business in Mississippi, nor does it own, lease or operate property, offices, or facilities in Mississippi. The plaintiff Falco is a Mississippi corporation with its office and principal place of business in Vicksburg, Mississippi. Falco owns and operates a fleet of inland river barges which it uses to transport lime it purchases in St. Genevieve, Missouri to its terminals at Vicksburg, Mississippi and Baton Rouge, Louisiana.

The parties entered into a "fully found" charter agreement whereby Tide agreed to move Falco's barges for a set price wherever Falco directed.[1] Tide's performance of the charter began on July 9, 1988. On July 11, the SENATOR SAM arrived in St. Genevieve, Missouri and picked up seven of the plaintiff's barges loaded with lime. On the 16th, it dropped two of these barges in Vicksburg, Mississippi and proceeded south to Baton Rouge, Louisiana, where it dropped the remaining five barges. Tide's tug then returned to Vicksburg and picked up more empty barges and proceeded upriver to Rosedale, Mississippi where it made a crew change. On July 25, the M/V SENATOR SAM ran aground at mile 732.5 on the Mississippi River at Memphis, Tennessee. The plaintiff's barges were stranded at this point for approximately 90 days.

The parties continued with the contract until its termination on November 4, 1988. After the contract, Tide continued to operate on the Mississippi River though its operations changed in nature from that of a "line" boat pursuant to a "fully found" charter to "tramp" towing for various river brokers.[2] While engaged in this line of work, Tide made several more trips to Mississippi port cities until the company was dissolved in December of 1989.[3]

On July 24, 1989, Falco filed the present action. Tide has moved to dismiss the complaint alleging that the exercise of jurisdiction by this court is not permitted by Mississippi's long-arm statute (Miss.Code Ann. § 13–3–57) nor the due process clause of the Fourteenth Amendment inasmuch as any contacts it has with Mississippi are both "casual" and "insignificant."

## LAW

■ A nonresident defendant is amenable to personal jurisdiction in a federal diversity case to the extent permitted by a state court in the state in which the federal court sits. *Cycles Ltd. v. W.J. Digby*, 889 F.2d 612, 616 (5th Cir.1989); *DeMelo v. Toche Marine*, 711 F.2d 1260, 1264 (5th Cir.1983). The extent of federal jurisdiction over the nonresident defendant is determined by a two-step inquiry. First, the defendant must be amenable to service of process under the forum state's jurisdictional long-arm statute. Second, the exercise of jurisdiction under the state statute must comport with the dictates of the due process clause of the Fourteenth Amend-

---

**1.** Under a "fully found" charter, the vessel owner maintains the vessel and supplies the crew. The charterer directs the vessel where to go.

**2.** "Line" boats move barges from one point to another and are not confined to a particular geographical area as are "harbor" boats which primarily assist line boats with the dropping or picking up of their barges. The term "tramp" towage is used in the trade to describe the situation where the owner of the vessel is not under contract to any particular entity. Instead a maritime broker contacts individual barge owners who want their barges moved and engages the tower to move those barges.

**3.** According to the documentation provided by Falco in its opposition to defendant's motion to dismiss, the M/V SENATOR SAM's logs reflect that the defendant's towboat made approximately 36 separate trips to Mississippi ports during this period, and either picked up or dropped at said ports, 121 barges for various companies.

ment. *Dalton v. R & W Marine,* 897 F.2d 1359 (5th Cir.1990); *Stuart v. Spademan,* 772 F.2d 1185, 1189 (5th Cir.1985). Falco asserts three possible grounds for obtaining personal jurisdiction over Tide, all of which are embodied in Mississippi's long-arm statute, § 13–3–57, which provides in relevant part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss.Code Ann. § 13–3–57 (Supp.1991). The long-arm's reach should be determined initially inasmuch as "the constitutional issue should not be considered if service was defective under the Mississippi statute." *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1167 (5th Cir.1985).

The Mississippi Supreme Court has construed § 13–3–57 as applicable to three types of nonresident defendants: (1) nonresidents who make a contract with a resident to be performed in whole or in part within the state; (2) nonresidents who commit a tort in whole or in part within the state against a resident or nonresident; and (3) nonresidents who are "doing business" within the state. *Thompson,* 755 F.2d at 1167–68, 1168 n. 5 (citing *Smith v. Temco Inc.,* 252 So.2d 212, 214–16 (Miss. 1971)). Falco's complaint is predicated upon the alleged commission of a tort; therefore, this category of the long-arm statute will be considered first.

### TORT

■ The casualty occurred roughly 23 miles from the state boundary on the Mississippi River adjacent to the City of Mem-phis, Tennessee. Falco asserts that because of the stranding it had to employ alternative means of transportation to pick up and deliver its limes. Plaintiff thereby incurred substantial increases in the costs of doing business in Mississippi which in turn also reduced its profits in this state. However, with respect to the long-arm statute, a tort occurs "where and when the actual injury takes place, not at the place of the economic consequences of the injury." *Cycles,* 889 F.2d at 619 (citing *Estate of Portnoy v. Cessna Aircraft Co.,* 730 F.2d 286, 290 (5th Cir.1984)). The actual injury in this case could only have taken place in Tennessee. Increased freight costs incurred and felt in Mississippi, are a consequence of the tort, and not significant jurisdictionally.

### CONTRACT

■ Tide entered into a contract with Falco, a resident of Mississippi, to be performed and which was performed in part in Mississippi. The charter agreement is silent as to the various ports from which the SENATOR SAM would arrive and depart. The defendant contends that Falco cannot proceed under the contract provision of § 13–3–57 since (1) the complaint sounds in tort and/or (2) no breach of contract occurred in Mississippi. Tide, however, cites to no authority nor has the court found any that § 13–3–57 requires such a showing. The statute on its face permits the courts of this forum to exercise personal jurisdiction over nonresidents who enter into a contractual relationship with a Mississippi resident to be performed in whole or in part in this forum. Such acts are deemed to be doing business in Mississippi for service of process arising from or growing out of such contract. It does not require a breach of contract to trigger the exercise of jurisdiction by this court.

However, "merely contracting with a resident of the forum state is insufficient ... to subject the nonresident to the forum's jurisdiction." *Colwell Realty Investments v. Triple T Inns,* 785 F.2d 1330, 1334 (5th Cir.1986). The tort in this case arises out of the contractual arrangements between a

resident of Mississippi and a nonresident. Before, during and after the alleged tort the parties had a charter agreement in force whereby Tide was to tow the plaintiff's barges as directed by the plaintiff and the defendant was to be paid for such services. Pursuant to that charter arrangement, part performance actually occurred in Mississippi. Tide has provided no evidence that the parties intended otherwise. This court is unpersuaded that § 13-3-57 requires a breach of contract action to proceed under the provision. As Falco has satisfied the state law basis for jurisdiction, this court does not reach the issue of whether or not Tide is also "doing business" in Mississippi per § 13-3-57. *See also Zakaria v. Safani*, 741 F.Supp. 1263 (S.D.Miss.1990) (plaintiff's fraud action against New York art dealer satisfied state law prong of jurisdictional analysis since contract was entered into with resident of state and payment per contract was to be made in Mississippi).

### DUE PROCESS

Once the court determines that the state law prong of the jurisdictional analysis is satisfied, the plaintiff must still demonstrate that the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment. This entails a finding that the nonresident defendant has (1) purposefully established "minimum contacts" with the forum state and, if so, (2) that entertainment of the suit against the nonresident would not offend "traditional notions of fair play and substantial justice." *Bullion v. Gillespie*, 895 F.2d 213, 216 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

### A. MINIMUM CONTACTS

■ Due process considerations require this court to determine, prior to exercising jurisdiction, that Tide has established sufficient contacts with the forum state indicating purposeful availment of the privilege of conducting activities with this forum and thereby invoking the "benefits and protections of its laws." *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542 (1985). At this stage of the analysis, the focus of inquiry is upon the nature of the underlying litigation. *Dalton*, 897 F.2d at 1361. Minimum contacts with the forum state may arise incident to the federal court's "general" or "specific" jurisdiction over the nonresident defendant. The court's specific jurisdiction may be exercised when the suit "arises out of or is related to" the defendant's contacts with the forum. *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986). General jurisdiction refers to a suit which does not arise from the nonresident's contacts with the forum state and can be asserted only over nonresident defendants who maintain "continuous and systematic contacts" with the forum state. *Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279, 283 (5th Cir.1988) (citing *Hall v. Helicoptero's Nacionales De Colombia*, 466 U.S. 408, 414, 415, 104 S.Ct. 1868 at 1872–73, 80 L.Ed.2d 404, 411 (1984)).

■ The court is of the opinion that the exercise of specific jurisdiction over Tide is appropriate under these circumstances. Pursuant to the charter agreement Tide towed Falco's barges as directed first to Vicksburg, Mississippi, then to Baton Rouge, Louisiana, then back to Vicksburg where five of the plaintiff's empty barges were picked up which were eventually stranded, for whatever reason, on the Mississippi River at Memphis, Tennessee while enroute back to St. Genevieve, Missouri. Clearly, this suit arises out of the contacts by Tide with Mississippi. Part performance of the agreement placed the defendant within the forum state's jurisdiction. It is neither "casual" nor "insignificant" contact insofar as the defendant was in the forum for the purpose of fulfilling the agreement between the parties.

■ While the number of contacts between the nonresident defendant and the forum state is relevant in determining the propriety of exercising personal jurisdiction, *Stuart*, 772 F.2d at 1192, it alone is not determinative. *D.J. Investments v. Metzeler Motorcycle Tire*, 754 F.2d 542

(5th Cir.1985). Instead, it is the nature and quality of those contacts as indicating purposeful availment by the nonresident of the privilege of conducting its activities in-state, thereby invoking the benefits and protections of the forum state laws. *Bullion,* 895 F.2d at 216 (citing *Burger King* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). The charter agreement was silent as to the actual ports where Tide would be required to sail.[4] The agreement, however, does specify that Illinois law will govern disputes between the parties as well as general maritime law. While choice of law provisions "warrant some weight in considering whether a defendant has purposefully invoked the benefits and protection of a state's laws for jurisdictional purposes," *Stuart,* 772 F.2d at 1195, such a provision contemplates only that—a choice of law not of forum. *Id.* While, under these circumstances, such a provision may have some bearing on whether or not it would be fair and reasonable to exercise jurisdiction, it has none on the minimum contacts analysis. The court holds that the defendant Tide has sufficient minimum contacts with the forum and so proceeds to the final stage of the inquiry, namely, whether or not it would nonetheless be unfair or unreasonable to subject Tide to the jurisdiction of this court.

## B. FAIRNESS

The court concludes that the burden upon the defendant is not so great in this instance as to prevent the courts exercise of jurisdiction. The defendant's activities in Mississippi are such that it could reasonably foresee being hailed into this forum's courts. During the two years that Tide was in existence it made a total of 167 separate trips to the ports of Mississippi. Tide entered into numerous contracts with various Mississippi vendors and suppliers along the river, and even employed three Mississippi residents as crew members during this period. While the nature of such activity may not be sufficient standing alone upon which to predicate jurisdiction,

taken as a whole or in their totality, they certainly indicate a reasonable basis for this court's belief that the exercise of its jurisdiction over defendant Tide Towing would not be unfair nor offend due process under these circumstances. Falco has provided the court sufficient facts to constitute a prima facie case for its assertion of personal jurisdiction over Tide Towing. At this stage of proceedings, this is all that is required. *D.J. Investments,* 754 F.2d at 546. Accordingly, the defendant's motion to dismiss for lack of personal jurisdiction should be denied.

---

**4.** The charter agreement simply stated that the M/V SENATOR SAM was to be delivered to