**MOORE VIDEO DISTRIBUTORS, INC.; C & B Video Incorporated; Michael Jean; Desert Sun Entertainment; and Betty Dowdell d/b/a Laughing Pines Entertainment, Plaintiffs,**

v.

**QUEST ENTERTAINMENT, INC.; Fire Mountain Pictures, Inc.; W. Hugh Parks, Jr.; Jim Parks; Jack Fowler; and John Does 1–10; and Roe Corporations 1–10, Defendants.**

Civ. A. No. J90–0367(W).

United States District Court, S.D. Mississippi, Jackson Division.

April 7, 1993.

John M. Roach, Jackson, MS, for plaintiffs.

Luther M. Dove, Jr., Jackson, MS, for defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

## I. STATEMENT OF THE CASE

This cause is currently before this court pursuant to the three following motions: (1) defendant Quest Entertainment, Inc.,'s motion to dismiss for lack of *in personam* jurisdiction, improper venue, and/or improper joinder of parties or, alternatively, to transfer pursuant to Rules 12(b)(2),[1] 12(b)(3),[2] 20(a),[3] Federal Rules of Civil Procedure, and 28 U.S.C. § 1404(a),[4] respectively; (2) plaintiff's motion for class certification pursuant to

---

1. Rule 12(b)(2) provides as follows:

    **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (2) lack of jurisdiction over the person; ...

2. Rule 12(b)(3) provides as follows:

    **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (3) improper venue; ...

3. Rule 20(a), Federal Rules of Civil Procedure, provides as follows:

    **(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons (and any vessel, cargo or other property subject to admiralty process in rem) may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

4. Title 28 U.S.C. § 1404(a) provides as follows:

    (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Rule 23, Federal Rules of Civil Procedure;[5] and (3) the motion of defendants Fire Mountain Pictures, W. Hugh Parks, Jr., Jimmy W. Parks, and Jack Fowler to dismiss for lack of personal jurisdiction or, alternatively, to transfer brought pursuant to Rule 12(b)(2),[6] Federal Rules of Civil Procedure, and 28 U.S.C. § 1404(a).[7] Before this court pursuant to its diversity jurisdiction as codified in Title 28 U.S.C. § 1332(a)(1),[8] plaintiffs' lawsuit charges defendant Quest Entertainment, Inc., its officers and its alleged successor corporation with a breach of plaintiffs' respective contracts under which plaintiffs allegedly were granted video distributor rights in specified geographical areas.

Plaintiff Moore Video Distributing, Inc., (hereinafter "Moore") is a corporation organized and existing under the laws of the State of Mississippi. Moore's principal place of business is in Jackson, Mississippi. Plaintiff C & B Video Incorporated (hereinafter "C & B") is a corporation organized and existing under the laws of the State of Louisiana. C & B's principal place of business is in Metairie, Louisiana. Plaintiff Michael Jean (hereinafter "Jean") is an adult resident citizen of the State of New Hampshire who resides in Nashua, New Hampshire. Plaintiff Desert Sun Entertainment (hereinafter "Desert Sun") is a corporation organized and existing under the laws of the State of New Mexico. Desert Sun's principal place of business is in Hobbs, New Mexico. Plaintiff Betty Dowdell (hereinafter "Dowdell") is an adult resident citizen of the State of Texas, d/b/a Laughing Pines Enterprises, which was located in Tyler, Texas. Dowdell herself resides in Marshall, Texas.

Defendant Quest Entertainment, Inc., (hereinafter "Quest"), is a Florida corporation organized and existing under the laws of the State of Florida. Quest's principal place of business is in Orlando, Florida. Quest has never been, nor is it now, qualified to do business in the State of Mississippi. Quest filed a Chapter 11 bankruptcy petition on January 30, 1991, in the United States Bankruptcy Court for the Middle District of Florida, Orlando Division. *In re Quest Entertainment, Inc.*, No. 91–00445 (Bankr.M.D.Fla. filed January 30, 1991).[9]

The following individual defendants were all officers of Quest. Defendant W. Hugh Parks, who owned 50% of Quest's stock, is an adult resident citizen of Florida and was the president of Quest. Defendant Jimmy W. Parks is an adult resident citizen of Florida and the brother of W. Hugh Parks. Jimmy W. Parks, the vice president and sales manager of Quest, owned the remaining 50% of Quest stock. Defendant Jack Fowler (hereinafter "Fowler") is an adult resident citizen of Florida. Fowler was employed as a salesman by Quest. Fire Mountain Pictures, Inc., (hereinafter "Fire Mountain"), is a corporation organized and existing under the laws of the State of Florida. Apparently, Fire Mountain was formed during the course of Quest's bankruptcy. Plaintiffs contend that Fire Mountain is the successor corporation of Quest.

## II. FACTS

Quest is a movie production company which produces its own movies for distribution and also purchases the distribution rights for movies produced by other persons. Beginning in the summer of 1989, Quest entered into approximately one hundred distributorship relationships with video distributors throughout the United States. Each distributor agreed to distribute Quest videotapes within a particular geographic region, and Quest agreed to supply each distributor with a certain quantity of videos of a speci-

---

5. *See infra* note 11.

6. *See supra* note 1.

7. *See supra* note 4.

8. Title 28 U.S.C. § 1332 provides in pertinent part:
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
   (1) citizens of different States;

9. On December 20, 1991, the bankruptcy court entered an order confirming the second amended plan of reorganization. Under this plan, Quest creditors had the right to receive cash or stock in the surviving corporation (Quest Entertainment Corporation).

fied quality. These agreements between the distributors and Quest were reduced to written distributorship contracts which set out the respective rights and obligations of Quest and the distributors. Through this distribution network, videos owned by Quest and videos to which Quest held distribution rights were marketed in every state of the United States.

The five plaintiffs here all entered into contracts with Quest which granted them distributorship rights in specified geographic regions. Each distributorship contract was individual and separately negotiated and consummated pursuant to contacts occurring exclusively between Florida (Quest's home state) and each plaintiff's state of residence. Each of the five plaintiffs contacted Quest in Florida after learning either through solicitation in local newspapers or through "word of mouth," that a Quest distributorship was available. After telephone conversations, the plaintiffs traveled separately and independently to Florida in order to familiarize themselves with Quest's operation and to conduct additional discussions with Quest's management regarding the proposed distributorship agreement.

After returning to their respective states of residence, all five plaintiffs independently made known to Quest their desire to enter into distributorships with Quest. Thereupon, Quest mailed the plaintiffs the distributorship contracts which were executed by the plaintiffs in their respective states of residence. The plaintiffs then returned the contracts to Quest's offices in Florida where they were executed by Quest. The individual distribution agreements were later effectuated by the plaintiffs' purchase of inventories and/or by Quest's periodic shipment of videotapes to plaintiffs in response to orders placed by the plaintiffs from their respective states of residence.

According to plaintiffs, under the individual distributorship agreements, the plaintiffs agreed to pay Quest certain sums of money and Quest agreed to: (1) furnish an initial inventory of video tapes; (2) furnish plaintiffs with the exclusive right to distribute within their respective territories videos developed or acquired by Quest; and (3) provide eighteen (18) different video movies ("titles") per twelve (12) month period of business.

Moore, the Mississippi plaintiff, distributed the tapes which it received from Quest within a region in central Mississippi. No employee, agent or other representative of Quest has ever traveled to Mississippi in connection with the distribution agreement between Moore and Quest.

Before proceeding to the plaintiffs' claims, this court must note that the plaintiff's pleadings are somewhat vague. The only specific facts presented seem to be drawn exclusively from the experiences of the Mississippi plaintiff, Moore Video.

Plaintiffs allege that Quest and its officers breached their respective contracts. According to the plaintiffs, Quest failed to live up to its obligations under the initial distributorship agreement and then coerced the plaintiffs into a second, disadvantageous distributorship agreement. Specifically, in regards to their allegations of their respective breaches, the plaintiffs assert that the defendants did not supply the requisite number of titles and that even the titles supplied were not of the promised quality. Plaintiffs also assert that the defendants interfered with their businesses by preventing the purchase, sale and/or exchange of franchise territory and product inventory between and among distributors. Plaintiffs assert that any purchase, sale and/or exchange is not restricted by any of the distributorship contracts. Lastly, the plaintiffs aver that the defendants breached their initial contracts and then attempted to coerce the plaintiffs into signing new, one-sided distribution contracts which would reduce plaintiffs to the status of employees of Quest. The coercion occurred, according to plaintiffs, when the defendants indicated that the signing of the new contract was a condition precedent to the maintenance of any business relationship with Quest whatsoever. The plaintiffs say they were advised that if they did not sign the new contract, however unprofitable or disadvantageous, they would lose their initial investment of $25,000.00.

## III. ISSUES

### A. DEFENDANT QUEST'S MOTION TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION, IMPROPER VENUE AND/OR IMPROPER JOINDER OF PARTIES OR, ALTERNATIVELY, TO TRANSFER.

■ Quest argues that, pursuant to Rules 12(b)(2), 12(b)(3), and 20(a), Federal Rules of Civil Procedure, this court lacks *in personam* jurisdiction over the claims of the four non-Mississippi plaintiffs, that this is not the proper venue for such claims, and that these four non-Mississippi plaintiffs were improperly joined. Alternatively, Quest argues that, pursuant to 28 U.S.C. § 1404(a),[10] this court should transfer this action to the Middle District of Florida, where the defendants reside.

■ This court holds that it has personal jurisdiction over the in-state plaintiff's claims, but does not have personal jurisdiction over the claims of the four non-Mississippi plaintiffs. By now it is hornbook law that "[i]n a federal diversity action ..., the reach of federal jurisdiction over nonresident defendants is measured by a two-step inquiry. First, the law of the forum state must provide for the assertion of such jurisdiction, and second, the exercise of jurisdiction under state law must comport with the dictates of the fourteenth amendment due process clause." *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984); *see also Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985); *Thompson v. Chrysler Motor Corp.*, 755 F.2d 1162, 1166 (5th Cir.1985); *D.J. Investments, Inc. v. Metzler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir.1985). So, the first step of the dual inquiry is solely a matter of determining the reach of the forum state's long-arm statute.

The second step—the due process inquiry—is governed by federal law and requires the satisfaction of two elements: (a) the nonresident must have some minimum contact with the forum which results from an affirmative act on his part; and (b) it must be fair and reasonable to require the nonresident to defend the suit in the forum state. *Stuart*, 772 F.2d at 1189; *D.J. Investments*, 754 F.2d at 545; *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 348 (5th Cir.1984). In the face of a challenge to the court's personal jurisdiction, the burden is on the plaintiffs to establish that such jurisdiction exists and may be exercised. *Thompson v. Chrysler Motors Corp.*, 755 F.2d at 1165.

The sole basis for the assertion of personal jurisdiction here over the nonresident defendants by the four nonresident plaintiffs is Miss.Code Ann. § 13–3–57 (Supp.1989), Mississippi's long-arm statute.[11] No Mississippi case has ever found that the Mississippi long-arm statute is co-extensive with federal due process. Therefore, the inquiry here must first focus on the long-arm statute itself. *Rittenhouse v. Mabry*, 832 F.2d 1380, 1383 (5th Cir.1987).

The Supreme Court of Mississippi has construed § 13–3–57 as applicable to three types of nonresident defendants: (1) non-residents who make a contract with a Mississippi resident to be performed in whole or in part within the state; (2) nonresidents who commit a tort in whole or in part within the state against a resident or nonresident; and (3) nonresidents who are "doing business" within the state. *Cycles, Ltd. v. Digby, Inc.*, 889 F.2d 612, 617 (5th Cir.1989).

Under the "doing business" prong, the nonresident plaintiffs here cannot assert personal jurisdiction over the nonresident defendants. In *DeWalt Products Corp.*, 743 F.2d

---

10. *See supra* note 4.

11. Miss.Code Ann. § 13–3–57 provides as follows:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state. Service of summons and process upon the defendant shall be had or made as is provided by the Mississippi Rules of Civil Procedure.

at 279, a 1984 action brought under the "doing business" provision of the long-arm statute, the Fifth Circuit stated as follows:

> [A]lthough the [Mississippi long-arm] statute on its face does not preclude its use by nonresident plaintiffs, federal courts interpreting Mississippi law have consistently held that a nonresident plaintiff cannot use its provisions to obtain in personam jurisdiction over a nonresident defendant.

Citing *Golden v. Cox Furniture Manufacturing Co., Inc.*, 683 F.2d 115, 117 (5th Cir.1982) ("[t]he thesis of these and similar decisions is that the statute is designed to protect and be used by only Mississippi residents." [citation omitted] ), and *Thompson v. F.W. Woolworth Co.*, 508 F.Supp. 522, 523 (N.D.Miss.1981); *accord Murray v. Remington Arms Co.*, 795 F.Supp. 805, 808 (S.D.Miss.1991); *Madison v. Revlon, Inc.*, 789 F.Supp. 758, 759–60 (S.D.Miss.1991); and *Prince v. F. Hoffmann–La Roche & Co., Inc.*, 780 F.Supp. 417, 419 (S.D.Miss.1991).

The *DeWalt* Court then went on to discuss whether the 1980 amendment to the long-arm statute expanded the ability of nonresident plaintiffs to assert personal jurisdiction against non-resident defendants under the "doing business" provision:

> Given the long-standing judicial construction of the long-arm statute to preclude its use by nonresident plaintiffs, the legislature's decision not to amend the "doing business" provision at the same time it specifically extended the "tort" provision to non-resident plaintiffs indicates a legislative intent that the "doing business" provision is not available to nonresident plaintiffs. Subsequent construction of the long-arm statute after the 1980 amendments confirms this result.

*DeWalt Products Corp.*, 743 F.2d at 279; *accord Herrley v. Volkswagen of America, Inc.*, 957 F.2d 216, 218 (5th Cir.1991); *Bailiff v. Manville Forest Products Corp.*, 792 F.Supp. 509, 511 (S.D.Miss.1990) ("[P]laintiffs, being nonresidents of the State of Mississippi, may not utilize the 'doing business' provision of the long-arm statute to invoke jurisdiction over a foreign corporation.").

Neither does the "contract" prong of the long-arm statute provide personal jurisdiction here for the nonresident plaintiffs' claims against the nonresident defendant. The language of the contract prong of the long-arm statute itself precludes the assertion of jurisdiction by the non-Mississippi plaintiffs here. The statute extends jurisdiction over:

> Any nonresident person, firm, ..., who shall make a contract *with a resident of this state to be performed* in whole or in part by any party *in this state*, ... (emphasis added).

Miss.Code Ann. § 13–3–57. *Accord Cycles, Ltd.*, 889 F.2d at 617 ("Under the contract arm of section 13–3–57 a nonresident defendant must 'make a contract with a *resident* of [Mississippi]' to be amenable to process.") (emphasis in original); *see also Falco Lime, Inc. v. Tide Towing Co.*, 779 F.Supp. 58, 61 (N.D.Miss.1991).

It is a tautology that the non-Mississippi plaintiffs are not residents of Mississippi, and there is no assertion that any of their contracts were to be performed in whole or in part by any party in Mississippi.

Neither does the "tort" provision of the Mississippi long-arm statute aid the nonresident plaintiffs here. The statute was amended by the Mississippi Legislature in 1980.[12] In *DeWalt Products Corp.*, 743 F.2d at 279, the Fifth Circuit stated:

---

12. The Mississippi long-arm statute, Miss.Code Ann. § 13–3–57 (1972) provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident *or nonresident* of this state,

> or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the Secretary of State of the State of Mississippi, ... upon whom all lawful process may be served.

The italicized language was added when the statute was amended by the Mississippi Legislature in 1980.

In 1980, the Mississippi legislature amended the statute to allow a nonresident plaintiff to obtain service of process upon a nonresident defendant who has committed a tort in whole or in part *in Mississippi* against the nonresident plaintiff. (emphasis added)

*Accord Herrley,* 957 F.2d at 218, and *Cycles, Ltd.,* 889 F.2d at 617 (the tort prong of § 13-3-57 is applicable to those "nonresidents who commit a tort in whole or in part within the state against a resident or nonresident") (emphasis added).

Thus, the tort provision was extended to nonresident plaintiffs, but only to those nonresident plaintiffs against whom a tort is committed in Mississippi. *See Murray,* 795 F.Supp. 805, 807 (S.D.Miss.1991) (at least some part of the tort must be committed in Mississippi for the tort prong to apply); and *Rittenhouse,* 832 F.2d at 1384 (the tort prong of the long-arm statute does not permit jurisdiction in Mississippi over a nonresident defendant where the tort was committed without Mississippi).

Here, the alleged torts committed against the nonresident plaintiffs occurred in either the plaintiffs' respective states of residence or Florida, but they certainly did not occur in Mississippi. "[W]ith respect to the [Mississippi] long-arm statute, a tort occurs 'where and when the actual injury takes place,....'" *Falco Lime, Inc.,* 779 F.Supp. at 61, quoting *Cycles, Ltd.,* 889 F.2d at 619.

The court finds then that it does not have personal jurisdiction over the claims of C & B, Michael Jean, Desert Sun Entertainment and Betty Dowdell, d/b/a Laughing Pines Entertainment under Miss.Code Ann. § 13-3-57. Since this court does not have jurisdiction over the non-Mississippi plaintiffs' claims under the Mississippi long-arm statute, the court need not examine whether such jurisdiction also would be prohibited under the due process clause of the Fourteenth Amendment.

Contrariwise, this court does possess personal jurisdiction over the claims of the Mississippi plaintiff, Moore. Moore is a resident of Mississippi and Moore's alleged contract with Quest was to be performed in whole or in part in Mississippi. "The [long-arm] statute on its face permits the courts of this forum to exercise personal jurisdiction over nonresidents who enter into a contractual relationship to be performed in whole or in part in this forum." *Falco Lime, Inc.,* 779 F.Supp. at 61.

### B. CLASS ACTION

■ The second motion currently before this court is the plaintiffs' motion for class certification filed pursuant to Rule 23 of the Federal Rules of Civil Procedure.[13] The gist of plaintiffs' argument is that the named plaintiffs and other potentially unnamed plaintiffs (plaintiffs claim that there were approximately seventy (70) distributors) all bear a similar relationship towards the single defendant such that a class action is warranted. According to plaintiffs' affidavits, they were all solicited in the same manner, had similar representations made to them by Quest, and had their respective contracts breached. Plaintiff Moore volunteers itself as a class representative.

In a motion for class certification, the plaintiff must make a prima facie showing in its pleading that it satisfies Rule 23. *Coca-Cola Bottling Co., Etc. v. Coca-Cola Co.,* 95 F.R.D. 168, 170 (1982) (burden of proving action appropriate for class certification is on party seeking to represent class). *Id.*

In analyzing a motion under Rule 23, the district court must first determine whether the plaintiffs, who bear the burden of proof, have satisfied all four mandatory requirements of subsection (a). *Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 810 n. 9 (5th Cir.1982); *Satterwhite v. City of Greenville,* 557 F.2d 414, 420 (5th Cir.1977). Subsection

13. Rule 23 of the Federal Rules of Civil Procedure provides in pertinent part as follows:
(a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(a) provides that a class may be certified *only* if all of the following requirements are met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are question of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Only after the above prerequisites have been met, does then the district court proceed to inquire into the propriety of the class under subsection (b) of Rule 23, that is whether the prosecution of separate actions by or against individual members of the class would create the risks enumerated therein. *Payne,* 673 F.2d at 810 n. 9; *State of Alabama v. Blue Bird Body Co., Inc.,* 573 F.2d 309, 315 (5th Cir.1978). Of course, "[t]he district court has broad discretion in determining whether or not to certify a class action under Rule 23," *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1350 (5th Cir.1985); *see also Montelongo v. Meese,* 803 F.2d 1341, 1351 (5th Cir.1986), and that such discretion is subject to review only under an "abuse of discretion" standard. *Payne v. Travenol Laboratories, Inc., supra,* 673 F.2d at 810.

As to the four prerequisites of Rule 23(a), the first is "numerosity." Here, the plaintiffs assert that, to the best of their knowledge, the number of potential plaintiff distributors is approximately 70. The numerosity requirement is probably satisfied here. The class that plaintiff Moore Video seeks to represent is sufficiently large enough to satisfy the numerosity requirement. "Although numbers alone are not determinative, numbers over forty, ..., have been certified as class actions; ..." *Coca–Cola Bottling Co., Etc.,* 95 F.R.D. at 174; 3B Jeremy C. Moore, et al., ¶ 23.05[1], pp. 144–45 (1993).[14]

However, the plaintiffs here fail to satisfy the remainder of the Rule 23(a) prerequisites. The contractual nature of the disputes herein renders them inamenable to resolution through a class action. In other words, the "commonality" and "typicality" requirements of Rule 23(a)(2) and (3) are not met here. The plaintiffs have not made a prima facie showing that the terms of the contracts were the same or that they were all breached in the same manner or under the same set of circumstances. Nor have the plaintiffs demonstrated that the experiences of the representative plaintiffs, Moore Video, were typical of those of the other plaintiffs and/or potential plaintiffs. Indeed, each alleged separate breach could present unique, individual issues of law and/or fact. This possibility, the breach of individually negotiated contracts with different terms at different times by a corporate defendant, would pose a situation totally unlike that of the paradigmatic class action suit, a tort action wherein all plaintiffs' claims derive from a single, central act of negligence in the design or manufacture of a mass-marketed product. Individual and differing contract claims even if emanating from a single defendant are rarely appropriate candidates for class certification. "The necessity for individualized proof indicates that a class action is not 'an economical or efficient way of processing the complaints of the proposed class.'" *Trevino v. Holly Sugar Corp.,* 811 F.2d 896, 905 (5th Cir.1987), quoting *Redditt v. Mississippi Extended Care Centers, Inc.,* 718 F.2d 1381, 1387 (5th Cir.1983).

In *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* the plaintiffs sought class certification pursuant to their claims that the defendants violated the terms and conditions of their collective employment agreement. Although the employment agreement was unitary, the Fifth Circuit nonetheless upheld the district court's denial of plaintiffs' class certification motion. *Id.* at 1350. Specifically, the Fifth Circuit relied upon the district court's finding that "common questions of law and fact did not predominate because [as here] the plaintiffs' claims varied with the ... conditions each faced; ...." *Id.*

In *Grainger v. State Sec. Life Ins. Co.,* 547 F.2d 303, 307–08 (5th Cir.1977), the Fifth

---

**14.** However, it should be noted that aside from the five plaintiffs herein, none of the other 70 class members has evinced a desire to join in a class action.

Circuit upheld the district court's finding that contract fraud claims were not appropriate for class action certification "because the claims depended upon the particularized representations made to each class member."

Thus, this court finds that since plaintiffs have failed to show that class action certification is appropriate here, that the requisite common issues of law and fact predominate here, plaintiff's motion for class certification must be denied.

## C. THE MOTION OF DEFENDANTS FIRE MOUNTAIN PICTURES, W. HUGH PARKS, JR., JIMMY W. PARKS, AND JACK FOWLER TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER.

The defendants, excluding defendant Quest, pursuant to Rule 12(b)(2),[15] Federal Rules of Civil Procedure, move this court to dismiss them from this lawsuit on grounds that the court lacks personal jurisdiction over them. The said defendants, individual officers of Quest and Quest's alleged corporate successor, assert that they did not transact any business in Mississippi and, thus, are not subject to this court's jurisdiction.

█ The complaint does not allege that any of the individual officers of Quest transacted any business in Mississippi. The existence of jurisdiction, pursuant to the Mississippi long-arm statute, over a corporate defendant does not, in and of itself, confer jurisdiction over the corporation's officers. "Some independent, individualized contacts must exist between the nonresident defendants and the forum." *Cole v. Alton,* 567 F.Supp. 1081, 1083 (N.D.Miss.1983); *Webb v. Culberson, Heller & Norton,* 357 F.Supp. 923, 925 (N.D.Miss.1973). A quotation from *Cole* is instructive.

> It is ... clear that in the instant case the individual movants could not have reasonably foreseen that they would be haled into court in Mississippi. The plaintiffs have not alleged or shown that the individuals committed any act in this state of a personal nature apart from the corporate function. Plaintiff's injuries claimed to re-

sult from "decisions, actions and activities of the movants acting in the scope of their employment and in the furtherance of the business of the corporation by which they were employed," *Webb,* 357 F.Supp. [at] 924, and therefore, because movants at all times believed in good faith that they were acting on behalf of a lawful corporation, this court concludes that jurisdiction cannot, within the bounds of "fair play and substantial justice," be asserted vicariously over the individual movants.

*Cole v. Alton,* 567 F.Supp. at 1084.

Accordingly, the motion of the individual officers of Quest, that is, defendants W. Hugh Parks, Jr., Jimmy W. Parks, and Jack Fowler to dismiss for lack of personal jurisdiction is granted.

In their complaint, plaintiffs allege that Fire Mountain is the corporate successor to Quest. Nothing more is stated. Neither party has addressed the matter in their papers. Hence, unsure of the corporate relationship of Fire Mountain to Quest, the court is not in a position to rule on the instant motion in Quest's favor. Hence, the motion is denied as to Quest.

## IV. SUMMARY

In summary, the court grants the defendants' motion to dismiss from this lawsuit the four non-Mississippi plaintiffs, namely C & B Video Incorporated, Michael Jean, Desert Sun Entertainment and Betty Dowdell, d/b/a Laughing Pines Entertainment. This court lacks in personam jurisdiction over their claims.

The court denies plaintiff's motion for class certification.

Finally, the court grants the motion of defendants W. Hugh Parks, Jr., Jimmy W. Parks and Jack Fowler wherein they ask to be dismissed from this lawsuit on the ground that this court lacks personal jurisdiction over them.

SO ORDERED AND ADJUDGED.

█

---

**15.** *See supra* note 1.